UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ANTHONY JOSEPH LENARD,
  *Petitioner*,

  v.                                                    1:22-cv-332-MSN-JFA

BEVERLY SNUKALS, ET AL.,
  *Respondent.[1]*

MEMORANDUM OPINION

Anthony Joseph Lenard, a Virginia inmate proceeding *pro se*, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on March 24, 2022, in which he challenges his 2015 conviction in the Circuit Court of the City of Richmond, Virginia for first-degree murder. [Dkt No. 1]. (*Commonwealth v. Lenard*, Case No. CR14F03376-00). On August 11, 2022, the Court ordered that the petition be conditionally filed and, in accordance with *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002), directed Petitioner to explain why his federal habeas petition should not be dismissed as barred by the federal habeas statute of limitations. *See* 28 U.S.C. § 2244(d). [Dkt. No. 6]. Petitioner responded on August 23, 2022. [Dkt. No. 7].[2] Respondents were served and filed their Rule 5 Answer and Motion to dismiss, with a brief in support and exhibits. [Dkt. Nos. 24, 25, 27]. Petitioner was advised of his right to respond in accordance with *Roseboro v. Garrison*, 528

---

[1] Chadwick Dotson, the current Director of the Virginia Department of Corrections, moves the Court to substitute him as the proper party respondent in this matter. [Dkt. No. 27 at 1, n.1] (citing 28 U.S.C. §§ 2242; 2243; Va. Code §§ 8.01-657; 53.1-20, 19.2-310. His motion will be granted.

[2] On May 25, 2023, a motion styled "MOTION/REQUEST to Change Venue" was filed. The motion was not filed by or signed by Petitioner. Instead, an inmate, Sheba Taylor, No. 1051357, wrote, signed, and filed the motion, which sought to dismiss this matter so that Petitioner could "pursue relief in state court before … seek[ing] relief in Federal Court" because Petitioner "did not understand the proper chain or exhaustion of state remedies first." [Dkt. No. 19]. The Court construed the motion as a motion to dismiss the habeas petition without prejudice to allow Petitioner to pursue state court remedies. However, because it had not been signed by Petitioner, it was dismissed without prejudice on August 17, 2023. [Dkt. No. 20]. Petitioner was advised he could refile the motion under his signature, but he did not refile the motion. [*Id.* at 2].

F.2d 309 (4th Cir. 1975), and Local Rule 7(K), and he has responded. [Dkt. Nos. 30, 31].[3] Accordingly, this matter is now ripe for disposition. For the reasons that follow, the Respondent's Motion to Dismiss must be granted and the petition must be dismissed with prejudice.

## I. Background

Petitioner was indicted by a multi-jurisdictional grand jury on July 9, 2014 for one count of first-degree murder, conspiracy to commit robbery, robbery, possession of a firearm by a felon, and two counts of use of a firearm in the commission of a felony. The Circuit Court for the City of Richmond appointed attorney David Baugh to represent him. [Dkt. No. 27-4 at 5]. Petitioner entered into a plea agreement with the prosecution and he pleaded guilty on February 2, 2015 to murder, in violation of Virginia Code § 18.2-32. [Dkt. No. 27-2]. The prosecutor summarized the evidence as follows:

> [O]n May 5, 2014, the defendant, Mr. Lenard, along with three others, Jermeaka Gorham Jesse Edmond and Paul Towns, entered the Victoria Jewelers at 309 East Broad Street in the [C]ity of Richmond.
>
> Prior to entering the store that group had conspired to rob that jewelry store. Our evidence would have shown that during the commission of that robbery, Mr. Edmond first shot the victim, Mr. Muhammad Baig, in the torso, [at] which time Mr. Lenard, the defendant in this case, leapt over the counter and fired one shot missing Mr. Baig, and then fired a second fatal shot, hitting Mr. Baig in the head causing his death.
>
> Our evidence would have been supported by a surveillance videotape of the event from four different camera angles, showing the actions of these individuals, showing at the time that Mr. Lenard jumped over the counter he had a weapon in his hand, that he had his arm extended downward toward the victim, at which point a flash went off, and therefore our evidence would have been supportive of the other evidence. One of our codefendants would have testified that he did administer the fatal shot.
>
> Your Honor, the three and four codefendants, Mr. Lenard, Mr. Edmond, and Ms. Gorham, along with one other person not directly involved with the robbery, were captured one day later in North Carolina.

---

[3] Petitioner's responses simply state that he will rely on "the arguments given in his petition." [Dkt. Nos. 30, 31]. The Court has considered the pleadings Petitioner filed, along with the attachments thereto.

The vehicle that they used to effectuate this robbery or to get away from this robbery[,] in it were found those four individuals, as well as jewelry from the jewelry store and both weapons that were, through forensic examination, proven to have fired the shots that hit Mr. Baig.

[Dkt. No. 24-3 at 7–9]. The prosecutor also introduced the autopsy report, which established that the victim was "killed by a gunshot wound to the head." [*Id.* at 9].[4]

In accordance with his plea agreement, Petitioner was sentenced to 75 years in prison with 25 years suspended. [Dkt. No. 27-1]. The other five indictments were terminated by *nolle prosequi*. (CAV at 153).[5] The final judgment order was entered on February 4, 2015. [Dkt. No. 27-2]. After the time to note an appeal had passed, Petitioner's attorney withdrew because he had not filed an appeal as Petitioner had requested and the circuit court appointed Cullen D. Seltzer to represent Petitioner on April 14, 2015. (CAV at 162).[6]

Seltzer was unsuccessful in obtaining relief in the circuit court because the final order had not been suspended, and the time to note an appeal (March 6, 2015) had passed before he was appointed. [Dkt. No. 1-1 at 16]. In a letter to Petitioner dated May 12, 2015, Seltzer advised Petitioner that his strongest argument was that the trial judge had "failed to properly advise [him] of [his] waiver of Constitutional rights before accepting [his] guilty plea," but that argument would

---

[4] Several photographs of Petitioner and one of the co-defendants, introduced during a motion to suppress are in the record. The testimony at the suppression hearing linked Petitioner to the co-defendant, as well as the Blue Dodge Durango used that day and later seized in North Carolina. (12/2/2014 Tr. at 43–56; Comm. Ex. Nos. 1, 2). The record contains several discovery receipts from the Commonwealth to Baugh: 1) August 1, 2014, received one CD and One DVD with copies of original video files and AVI (audio and video) files related to the Jewelry Store Case; 2) September 10, 2014, received 39 separate documents (investigative notes, reports, emails, forensic reports, and documents; sketch of scene, screen shots from motel in North Carolina, search warrants, autopsy report and notes, firearms certificates of analysis, and multi-jurisdictional grand jury testimony; 3) September 10, 2014, 37 separate video interviews and photographs, cell phone records, jail calls, enhanced photographs; 4) September 17, 2014, two additional documents, t20 videos, and five sets of jail calls; and 5) January 15, 2015, 17 separate documents, and a CD and DVD with additional videos. (CCT at 135–139, 161–63).

[5] References to the record of the Court of Appeals of Virginia are designated, "CAV."

[6] Baugh acknowledged that Petitioner made a timely request that he appeal the case. (CAV at 541). Baugh would have noted the appeal but he was under the mistaken belief that the February 4, 2015 order had been suspended. [Dkt. No. 1-1 at 48–49].

have to be presented in a "'collateral attack' . . .  known as a habeas corpus challenge." Seltzer advised Petitioner if he wanted "to challenge the conviction on this ground," that Petitioner would "have to press that argument in a habeas or collateral attack." [*Id.*].[7] Seltzer was not appointed by the court to represent him in habeas and advised Petitioner that if he wanted to file a habeas petition that he "should begin work on that right away since there are deadlines that limit when such a petition must be filed." [*Id.* at 17].

On June 16, 2015, Seltzer filed a motion for a belated appeal in the Court of Appeals of Virginia. [CAV at 1]. In a letter to Petitioner dated September 22, 2015, Seltzer told Petitioner that he had not heard if the motion for a belated appeal had been ruled on, but he would keep Petitioner updated on the status of the motion. Seltzer again reminded Petitioner of his right to seek relief by way of a petition for a writ of habeas corpus "in either state or federal court." [Dkt. No. 1–1 at 53]. If Petitioner decided "to file a habeas corpus challenge, [he] should consider hiring an attorney to help [him] with that effort right away. There are important deadlines that must be followed in a habeas challenge." [*Id.*].

The Court of Appeals of Virginia granted Petitioner a delayed appeal on October 14, 2015. [Dkt. No. 27–4 at 61]. Seltzer filed Petitioner's petition for appeal on March 29, 2016. [*Id.* at 1]. The petition alleged that the trial court erred in accepting Petitioner's guilty plea because his plea "was not a knowing, voluntary, and intelligent waiver of his Constitutional rights." [*Id.* at 6]. The petition was granted on June 2, 2016, and counsel filed the opening brief on July 12, 2016. [*Id.* at 61, 85]. After all the briefs were filed and oral argument was scheduled, counsel, at Petitioner's request, filed a motion to withdraw the appeal. [Dkt. No. 27–5].

---

[7] Seltzer also stated that it was possible that Petitioner could seek a delayed appeal.

On May 3, 2016, shortly before the appeal was granted, Petitioner spoke by telephone with Seltzer. Prior to that call, Petitioner had sent Seltzer two letters indicating that Petitioner "no longer wished to proceed with [his] appeal." [Dkt. No. 1–1 at 57]. Seltzer sent Petitioner a letter dated May 6, 2016, summarizing the previous communications, and told Petitioner he had also spoken with Petitioner's father. Seltzer noted that during the May 3, 2016, telephone call that Petitioner had repeated to him "that [he] did not want to continue [his] criminal appeal because of [his] concern that if the appeal was successful and [he] went back to trial, . . . that [he] could get a worse sentence." [*Id.*]. Petitioner also related to Seltzer that his "family had been telling [him] to drop the appeal for these reasons." [*Id.*].

Seltzer continued and acknowledged that dropping the appeal was "completely" Petitioner's decision but that it was Seltzer's advice "not to cancel the appeal at this time for a couple of reasons." [*Id.*].

> First, the process [would] continue for about a year and [Petitioner could] always cancel it before the Court of Appeals makes a ruling and be in the same position that [he was] in now. [And he] should take some time to think about whether [he] want[ed] to drop the appeal because once [he] made that decision, [he would] not be able to take it back.
>
> Second, [his] [50]-year sentence is, essentially, a life sentence. [Petitioner would] not likely be released until [he was] close to 70 years old. Therefore, even if [he] end[ed] up with a life sentence, in which [he] may be eligible for geriatric (*i.e.*, elderly inmate) release . . . . If [he was granted] geriatric release . . . [he might] get out of prison on a life sentence at around the same time as [he] would with [his] current [50]-year sentence."

[*Id.*]. Seltzer reiterated his advice to take his time because "[o]nce the appeal [was] withdrawn, it is withdrawn forever [,] and [Petitioner] won't be able to change [his] mind later this year or in a few years and get the appeal re-started." [*Id.* at 58]. The letter indicated that Petitioner and Seltzer had a call scheduled the following week on May 12, 2016, at 2:00 p.m. [*Id.*].

In a letter to Petitioner dated October 6, 2016, Seltzer acknowledged he had received Petitioner's withdrawal of appeal form. Seltzer told Petitioner that Petitioner had improperly executed the first form, that it had to be redone, and sent him a second form. [*Id.* at 21]. In a letter dated October 24, 2016, Seltzer sent Petitioner a third form to Petitioner because Petitioner had improperly executed the second form. Seltzer also told Petitioner that he had requested a continuance of the oral argument, which had been set for November 2, 2016, because Petitioner had indicated he wanted to withdraw his appeal. [*Id.* at 18].

Seltzer received the properly executed form from Petitioner on November 7, 2016, and on that same day, Seltzer expressed his concern based on something contained in the letter that Petitioner had sent with his form that Petitioner did not understand "what the oral argument was about." Seltzer, because Petitioner's letter indicated uncertainty about oral argument, provided a detailed description of oral argument and its purpose and he informed Petitioner that he would delay filing the motion to withdraw. Seltzer included an emphasized paragraph informing Petitioner if he wanted to continue with his appeal, he had to contact Seltzer immediately and if Seltzer did not hear from him by November 21, 2016, he would file the motion and that would end his "appeal forever." [*Id.* at 23].[8] Seltzer filed the motion to withdraw on November 29, 2016. [Dkt. No. 27-5]. The Court of Appeals of Virginia granted the motion on December 2, 2016. [*Id.* at 4].

In his federal petition, Petitioner does not indicate he sought further review in the Supreme Court of Virginia.[9] The federal petition also indicates that the Petitioner did not file a state habeas petition after the conclusion of the direct appeal proceedings [Dkt. No. 1 at 3, 5, 7, 8-9, 10].

---

[8] Seltzer also informed Petitioner that he was arranging to send him his case file but was not sure the prison would accept it because it was "a large amount of paper." [*Id.* at 23].

[9] Virginia's online Case Information System confirms Petitioner's conviction and the relevant dates; and also that he did not appeal to the Supreme Court of Virginia. *See* http://www.courts.state.va.us/ (Case Status and Information page,

On October 26, 2017, the Department of Forensic Science ("DFS") responded to Petitioner's state FOIA request for documents, but DFS had been unable to locate any records during a computer search. [Dkt. No. 1-1 at 45]. In a letter to Petitioner dated December 4, 2018, the DFS responded to another inquiry by Petitioner, pursuant to Virginia Code § 9.1-1104, and informed him that it did not have any Certificates of Analysis issued by DFS related to his case. [*Id.* at 46].

In October 2018, Petitioner filed a complaint with the Virginia State Bar because Seltzer had not provided him with a copy of his case file. [Id. at 55]. Seltzer responded to the complaint in a letter dated October 22, 2018, indicating that he had tried to send a copy to Petitioner but that the prison had refused the paper copy because it was too large, and Petitioner was not allowed to possess a digital version. Petitioner sent Seltzer a copy of a prison policy on CDs, and in a letter dated March 15, 2019, Seltzer indicated he would try again based on the policy he provided. [*Id.* at 15].[10]

## II. Federal Claims

Petitioner, proceeding *pro se*, filed his federal § 2254 petition on January 4, 2022. [Dkt. No. 1 at 14].[11] Petitioner raises the following claims:

---

Circuit Court, Richmond City, and search "Lenard, Anthony"); *id.* (Case Status and Information page, Court of Appeals, and search "Lenard, Anthony"); *id.* (Case Status and Information page, Supreme Court of Virginia, and search "Lenard, Anthony") (last viewed May 28, 2024). *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("most frequent use of judicial notice of ascertainable facts is in noticing the content of court records").

[10] Respondent included a copy of the current version of what appears to be the policy Petitioner and Seltzer were discussing by letter. Virginia Department of Corrections Operating Procedure 866.3 ("VDOC OP 866.3"), which concerns an inmate's access to the legal system. Inmates are allowed to receive CD's containing legal material but the inmate, depending on the security level of his institution, may not be able to physically possess and store the items; instead the CDs would be stored in the Records Office and the CDs would be available for the inmate to view. VDOC OP 866.3 IV(C)(7) (process for inmate to access and view CDs received form a court or verified attorney).

[11] Petitioner executed his § 2254 petition on January 4, 2022. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that because a prisoner must rely for prison officials to mail their petition to court, the petition is considered filed as of the date it was properly delivered to prison officials for mailing to the court).

1. Ineffective assistance of counsel by his court-appointed attorney [Baugh] "who was very unprofessional." Counsel did not take notes when they met; counsel looked at Petitioner in "disgust" and made "negative" comments about Petitioner's case; counsel did not help Petitioner "in any way"; and counsel did not "advocate" for Petitioner and "col[l]uded" to conceal "Constitutional violations." [Dkt. No. 1 at 5].

2. The trial judge and counsel violated Rule 5A:18 and Petitioner's plea and sentencing were "*void ab initio*." Petitioner's plea was not valid because it "was not a knowing, voluntary, and intelligent waiver of [his] constitutional rights, which is "exempt from preservation requirements pursuant to Rule 5A:18." Neither the judge nor counsel ever "advised [Petitioner], in person or on the record[,] of the many rights and privileges [Petitioner] would be waiving by pleading guilty." Specifically, "intelligence, self-incrimination, confronting witnesses against [him], demand government prove its case, object . . . ." [Id. at 6-7]. Counsel in "disgust" made "negative" comments about Petitioner's case; counsel did not help Petitioner "in any way"; and counsel did not "advocate" for Petitioner and "col[l]uded" to conceal "Constitutional violations." [*Id.*].

3. Ineffective assistance of counsel on direct appeal caused a "procedural default" and prejudice. Appellate counsel "did not aid [Petitioner] through the interest of justice, his actions and words [were] in the interest of protecting the courts, and other lawyers." [*Id.* at 8] (citing *Williams v. Anderson*, 460 F.3d 789, 799-801 (6th Cir. 2006)).

4. Petitioner was not allowed an "evidentiary hearing to view, hear, or explain if evidence was tied to [Petitioner] or someone else." The police conspired with Petitioner's co-defendants "to create evidence" and petitioner did not "know what evidence they had." Petitioner learned they had "no forensics," or any "evidence at pertaining to [Petitioner's] case." The prosecution violated their 'duty to disclose" and Petitioner's counsel conspired with them "to ensure [his] incarceration." [*Id.* at 10].[12]

**III. Statute of Limitations**

Respondent moves the Court to dismiss the federal habeas petition as untimely. Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a petition for a writ of habeas corpus must be dismissed if it is filed more than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court

---

[12] A district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard" and it is "the district court's duty to consider only the specific claims raised in a § 2254 petition." *See Folkes v. Nelsen*, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); *Frey v. Schuetzle*, 78 F.3d 359, 360–61 (8th Cir. 1996) ("[D]istrict courts must be careful to adjudicate only those claims upon which the petitioner seeks relief and take care not to decide claims upon which the habeas petitioner never intended to seek relief.").

Case 1:22-cv-00332-MSN-JFA   Document 32   Filed 08/21/24   Page 9 of 19 PageID# 357

recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)–(D). This period generally begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and excludes "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(1)(A), (d)(2).

Petitioner's direct appeal concluded on December 2, 2016. Consequently, his conviction was final for purposes of applying the federal habeas statute of limitations 30 days later, Monday, January 3, 2017, when the time for noting an appeal to the Supreme Court of Virginia expired.[13] *See Hill*, 277 F.3d at 704 ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired ....") (citing 28 U.S.C. § 2244(d)(1)(A)); Va. Sup. Ct. R. 5:14(a) ("No appeal from a judgment of the Court of Appeals which is subject to appeal to this Court will be allowed unless, within 30 days after entry of final judgment or order denying a timely petition for rehearing, a notice of appeal is filed with the clerk of the Court of Appeals, as provided for in Rule 5A:1."). Petitioner had one year from that date, or until Wednesday, January 3, 2018, to file his § 2254 petition. Absent statutory or equitable tolling, the federal petition is untimely.

---

[13] In calculating when direct review ended, the 90-day period for filing an application for writ of certiorari with the United States Supreme Court is not included when a habeas petitioner does not properly maintain a direct appeal through the highest available state court. *Miller v. Hooks*, 749 F. App'x 154, 159 (4th Cir. 2018) ("a state conviction for a petitioner who does not appeal to the state court of last resort becomes final when the time for seeking further review in state court expires") (citing *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012) ("[F]or a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking review expires."); *id* at 150 (holding that if a petitioner dos "not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired"). *See, e.g., Butler v. Cain*, 533 F.3d 314, 316–19 (5th Cir. 2008); *Pugh v. Smith*, 465 F.3d 1295, 1297–1300 (11th Cir. 2006).

*A. Statutory Tolling*

In calculating the one-year period, the Court must exclude the time during which properly filed state collateral proceedings are pending. *See* 28 U.S.C. § 2244(d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). The federal statute of limitations lapsed on January 3, 2018 because no state habeas petition was ever filed and there was no basis for statutory tolling. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (the statutory tolling provision, 28 U.S.C. § 2244(d)(1), does not permit the re-initiation of the limitations period that has ended before the state petition was filed); *see also Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition . . . filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled"). Unless Petitioner is entitled to equitable tolling, his petition is untimely.

*B. Equitable Tolling*

To be entitled to equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace*, 544 U.S. at 418). The petitioner generally is obliged to specify the steps he took in diligently pursuing his federal claim. *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001). In addition, the petitioner must "demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000); *see also Rouse v. Lee*, 339 F.3d 238, 246

(4th Cir. 2003). Here, Petitioner asserts his ignorance, difficulty in obtaining assistance, and trouble getting his file from counsel as reasons he could not file in a timely manner.

It is well established that Petitioner's asserted "ignorance," [Dkt. No. 1 at 13], is not a basis for equitable tolling of the statute of limitations. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) ("ignorance of the law is not a basis for equitable tolling"); *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002) ("a petitioner's *own* ignorance or mistake does not warrant equitable tolling"); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("It is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'") (quoting *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999)); and citing *Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000) (petitioner's *pro se* status does not warrant equitable tolling); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (equitable tolling not justified by fact that petitioner simply did not know about AEDPA time limitation).[14]

It is just as well settled that needing the assistance of or relying on other inmates for assistance does not warrant equitable tolling. *Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010) ("reliance on helpers who were transferred or too busy to attend to his petitions . . . are hardly extraordinary [circumstances] given the vicissitudes of prison life, and there is no indication in the record that they made it 'impossible' for him to file on time"); *Marsh*, 223 F.3d at 1220 ("The fact that an inmate law clerk was assisting in drafting the state petition does not relieve [petitioner] from the personal responsibility of complying with the law."); *Malone v. Okla.*, 100 F.

---

[14] *See also Baker v. California Dept. of Corr.*, 484 F. App'x 130, 131 (9th Cir. 2012) (under Ninth Circuit precedent, "[l]ow literacy levels, lack of legal knowledge, and need for some assistance to prepare a habeas petition are not extraordinary circumstances to warrant equitable tolling of an untimely habeas petition"); *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000) (prisoner's lack of legal knowledge or legal resources not sufficient to warrant equitable tolling); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999) (holding illiteracy does not merit equitable tolling); *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 172 n. 7 (S.D.N.Y. 2000) (petitioner's lack of legal training insufficient to warrant equitable tolling); *Henderson v. Johnson*, 1 F. Supp. 2d 650, 656 (N.D. Tex. 1998) (claims that petitioner "did not have professional legal assistance [and] 'did not know what to do' . . . are far from the extraordinary circumstances required to toll the statute").

App'x 795, 798 (10th Cir. 2004) (holding assistance petitioner received from an inmate law clerk did not relieve him of personal responsibility to file within the AEDPA's one-year period) (citing *Marsh*, 223 F.3d at 1220); *Wilson v. Bennett*, 188 F. Supp. 2d 347, 353-54 (S.D.N.Y. 2002) (allegations that the petitioner lacked legal knowledge and had to rely on other prisoners for legal advice and in preparing his papers "cannot justify equitable tolling," as such circumstances are not "extraordinary").

Petitioner's last asserted "cause" as a basis to apply equitable tolling is the trouble had in obtaining his case file from counsel. Even without his case file, Petitioner "clearly knew what took place [in the trial court] and what his grounds for relief were." *Hall v. Warden, Lebannon Corr. Inst.*, 662 F.3d 745, 751 (6th Cir. 2011). Petitioner's first claim concerns ineffective assistance of his trial counsel Baugh, and includes a long list of complaints about Baugh's demeanor and alleged failures—which are all matters that Petitioner was personally aware of not only at the time he entered his plea, but well before he withdrew his appeal against the advice of his then counsel Seltzer.

Petitioner's second claim concerns his alleged involuntary guilty plea. Seltzer advised Petitioner in his May 12, 2015 letter that he thought Petitioner's strongest claim was to challenge the voluntariness of his plea; and, if the belated appeal was not granted to pursue the claim—and Petitioner wanted to pursue the claim—that Petitioner would likely have to raise the claim in a habeas petition. Seltzer stressed to Petitioner that he "should begin work on it right away since there are deadlines that limit when such a petition must be filed." [Dkt. No. 1-1 at 17]. In his September 22, 2015 letter, Seltzer reiterated his admonition about the time limitations in habeas, advised that such a petition could be brought in either state or federal court, and again reminded Petitioner that there were "important deadlines that must be followed in a habeas challenge." [*Id.*

at 53]. Again this was a matter that Petitioner knew of before he withdrew his appeal, and a claim that he had the benefit of Seltzer briefing for him.

The third claim alleges that Seltzer was ineffective because Seltzer would not raise claims on appeal that were outside the scope of the appeal. Instead, Seltzer raised a potential claim that concerned a matter concerning the plea colloquy that was based on matters of record.[15] First, Petitioner was aware of this claim before he withdrew his appeal. Second, he had all of the letters from Seltzer that he needed to raise this claim.

Petitioner's fourth claim—alleging he was denied a hearing of the evidence against; conclusory allegations of made-up evidence; and his allegation that there was no forensic evidence—has no basis in fact and is disproved by the record. As noted above, *see, supra* at note 7, trial counsel Baugh obtained numerous videos of Petitioner at the bank with a co-defendant, later outside the jewelry store shortly before the robbery, and others as well; Baugh had forensic evidence (autopsy reports, certificates of analysis (firearms); and countless police reports, statements, and other documents and photographs). In addition, Petitioner was present for the motion to suppress (200 plus pages of transcript and numerous exhibits), during which much of the evidence that established his identity and guilt was presented to justify the arrests and searches conducted by police in Virginia and North Carolina. Any delay in receiving counsel's file did not prevent Petitioner from filing a state or federal habeas petition in a timely manner to raise the claims set forth in the federal § 2254 petition. "[E]ven without his case file, Petitioner 'clearly

---

[15] Petitioner had the right to effective assistance of counsel on direct appeal, and the Fourth Circuit presumes "that appellate counsel 'decided which issues were most likely to afford relief on appeal.'" *United States v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014) (citations omitted). "Effective assistance of appellate counsel[, however,] 'does not require the presentation of all issues on appeal that may have merit.'" *Id.* at 829 (quoting *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008)). "As a general matter, 'only when ignored issues are clearly stronger than those presented' should we find ineffective assistance for failure to pursue claims on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)). Petitioner has not put forth any non-defaulted claim that Seltzer should have pursued.

knew what took place at [the trial court] and what his grounds for relief were.'" *Camelin v. Se. Corr. Inst.*, No. 2:21cv4070, 2022 U.S. Dist. LEXIS 82206, *7 (S.D. Ohio May 6, 2022) (citing *Hall v. Warden, Lebannon Corr. Inst*, 662 F.3d 745, 751 (6th Cir. 2011)); *see also United States v. Denny*, 694 F.3d 1185, 1191–92 (10th Cir. 2012) (attorney's delay in forwarding case records did not warrant equitable tolling in part because petitioner did not show that he diligently tried to obtain the documents from another source, such as the court's docket); *Hall*, 662 F.3d at 750–51 (6th Cir. 2011) (finding that "the unavailability of or delay in receiving transcripts is not enough to entitle a habeas petitioner to equitable tolling" because "access to the trial transcript . . . is not necessary to file a habeas petition"); *Lloyd v. Van Natta*, 296 F.3d 630, 633–34 (7th Cir. 2002) (holding unavailability of complete trial transcript did not warrant equitable tolling of the limitations period for filing a habeas petition which alleged prosecutorial misconduct in the closing argument because petitioner was at the trial and knew the basis on which he could have asserted prosecutorial misconduct); *Jihad v. Hvass*, 267 F.3d 803 (8th Cir. 2001) (holding that tolling is not appropriate even though petitioner's defense counsel failed to send petitioner his trial transcript for eight months); *Castro-Gaxiola v. United States*, 665 F. Supp. 2d 1049, 1052 (W.D. Mo. 2009) (holding that § 2255 petitioner's difficulty "in receiving . . . his former attorney's case file . . . [did] not constitute extraordinary circumstances" sufficient to warrant equitable tolling because petitioner's "possession of [the] case file was not a prerequisite to filing his § 2255 motion").[16]

---

[16] *See Sanchez v. Poole*, 79 F. App'x 254 (9th Cir. Oct. 10, 2003) (claim that inmate was prevented from timely filing her habeas petition due to her trial counsel's delay in forwarding the inmate her case files and the inmate's ignorance of law was rejected; any hardship she suffered was caused by her own inaction during limitations period). A review of the record establishes that petitioner was aware of each of his claims from the trial court and appellate court proceedings. *See also Robison v. Hinkle*, 610 F. Supp. 2d 533, 539–40 (E.D. Va. 2009) (a petitioner must allege facts that establish "the existence of 'a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing . . . .'") (quoting *Rios v. Mazzuca*, 78 F. App'x 742, 743 (2d Cir. 2003)) (footnotes omitted).

Petitioner was not diligent in pursuing habeas relief, and the delay in receiving his attorney's file did not prevent him from filing his state or federal petition in a timely manner because Petitioner knew of the basis of his claims before he withdrew his state direct appeal.

*C. Actual Innocence*

Actual innocence may also allow review of an untimely habeas petition. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). "[C]laims of actual innocence are rarely successful," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), however, and "should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998). The standard of review for demonstrating innocence under *Schlup* is a demanding one. It requires that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316).

In order to demonstrate the fundamental miscarriage of justice exception to AEDPA's statute of limitations, a petitioner must present *new* evidence to support his claim of actual innocence, and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327 (emphasis added). Petitioner has not proffered any "new reliable evidence" demonstrating a colorable claim of actual innocence. *Coleman*, 501 U.S. at 730; *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010). He has failed to satisfy *Schlup*'s high standard or demonstrate that his untimely claims are entitled to be reviewed under *McQuiggin*. Accordingly, Petitioner's petition is time-barred, and must be dismissed.

## IV. Exhaustion and Default

Even if timely, Petitioner's claims are defaulted. Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. *See* 28 U.S.C. § 2254(b); *Granberry v Greer*, 481 U.S. 129 (1987). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia must have presented to the Supreme Court of Virginia the same factual and legal claims raised in his § 2254 petition. *See, e.g., Duncan v. Henry*, 513 U.S. 364, 365–66 (1995). "To [exhaust his claims], the petitioner must have presented to the state court 'both the operative facts and the controlling legal principles.'" *Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002) (citation omitted); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (exhausting the facts upon which a petitioner relies is an important aspect of exhaustion under AEDPA, which limits federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits."). The Petitioner has the burden to demonstrate he has exhausted his claims. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

Related to exhaustion is the doctrine of procedural fault which "occurs when the petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Burket v. Angelone*, 208 F.3d 172, 183 (4th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). "Since the procedural bar that gives rise to exhaustion is an independent and adequate state ground, . . . [the] claims raised . . . must be treated as simultaneously exhausted and procedurally barred from federal habeas review." *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (citing *Baker*, 220 F.3d at 288). If a state

procedural rule "is both adequate and independent, it will bar consideration of the merits of claims on habeas review unless the petitioner demonstrates cause for the default and prejudice resulting therefrom or that a failure to consider the claims will result in a fundamental miscarriage of justice." *McNeill v. Polk*, 476 F.3d 206, 211 (4th Cir. 2007) (citing *Coleman*, 501 U.S. at 750). A state procedural rule is "adequate" to bar federal review of a claim if the rule is firmly established and regularly or consistently applied by the state court; and it is "independent" if it does not depend on a federal constitutional ruling. *Yeatts v. Angelone*, 166 F.3d 255, 263–64 (4th Cir. 1998). Here, if Petitioner returned to state court to raise his unexhausted claims, they would be deemed barred by the state statute of limitations, Virginia Code § 8.01–654(A)(2), and/or the rule of *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974) (holding that state habeas petitioner may not raise for first time in habeas petition non-jurisdictional claims that could have been presented at trial or on direct appeal).[17]

   A federal court may review a defaulted claim if the petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law" or a fundamental miscarriage of justice. *See Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2005). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *See Coleman*, 501 U.S. at 753–54. To show "prejudice," a petitioner must show that an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170

---

[17] Virginia Code § 8.01-654(A)(2) is an adequate and independent bar that precludes federal review of a claim. *Sparrow*, 439 F. Supp. 2d at 588; *see, e.g., Baker v. Clarke*, 95 F. Supp. 3d 913, 917–18 (E.D. Va. 2015) ("many courts have held, Virginia Code § 8.01-654(A)(2) constitutes an adequate and independent state-law procedural rule, as it is a statutory rule that is not tied to the federal Constitution.") (citation omitted). The same is true for a claim barred under *Slayton v. Parrigan*. *Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997) (observing that the Fourth Circuit has "held on numerous occasions that the procedural default rule set forth in *Slayton* constitutes an adequate and independent state-law ground for decision").

(1982) (emphasis removed). A court need not consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995).

Although ineffective assistance of counsel may be sufficient to establish "cause" to excuse a default, *see Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 480 (E.D. Va. 2005),

> where a petitioner for federal habeas relief seeks review of claims defaulted during state habeas proceedings, he must show that he raised the ineffectiveness argument as a cause for the defaulted substantive claims during his state habeas proceedings. If a petitioner did not raise the ineffectiveness claim at the state habeas level, a federal habeas court may not consider it. Edwards, 529 U.S. at 452–53.

*Powell v. Kelly*, 531 F. Supp. 2d 695, 723 (E.D. Va. 2008), *aff'd*, 562 F.3d 656 (4th Cir. 2009).

Here, Petitioner never filed a state habeas petition, and as discussed above, there was nothing that impeded Petitioner from timely filing a state habeas petition. Lastly, there is nothing novel about Petitioner's claims.[18]

As to the "miscarriage of justice exception" that exception "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin*, 569 U.S. at 394-95 (quoting *Schlup*, 513 U.S. at 329). Petitioner presents no new evidence of actual innocence.[19] The evidence from the suppression hearing and the prosecutor's proffer, which are unchallenged, indicate an overwhelming amount of evidence of his guilt. Even if not untimely, the claims are defaulted.

---

[18] *See Wilson v. Brown*, No. 3:14cv768, 2015 U.S. Dist. LEXIS 125291, *11 (E.D. Va. Sept. 18, 2015) (holding the petitioner failed to exhaust her claim—that her guilty plea was not knowing, intelligent, or voluntary—which rendered the claim procedurally defaulted and barred her claim from federal review), *appeal dismissed*, 697 F. App'x 196 (4th Cir. 2017), *cert. denied*, 583 U.S. 1118 (2018).

[19] One of Petitioner's co-defendants, Jesse Gregory Edmond, was tried and convicted by a jury the same day Petitioner pleaded guilty to first-degree murder. Edmond's appealed his convictions (murder, robbery, conspiracy to commit robbery, use of a firearm in the commission of a felony, and use of a firearm in commission of a felony, subsequent offense), challenging the trial court's rulings on the motions to suppress. The rulings on the motion to suppress were affirmed. *Edmond v. Commonwealth*, 788 S.E.2d 277, 279–81 (Va. Ct. App. 2016).

## IV. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss [Dkt. No. 25] will be granted, and the petition will be dismissed by an order to be issued with this opinion.[20]

/s/ _____
Michael S. Nachmanoff
United States District Judge

August 21, 2024
Alexandria, Virginia

---

[20] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.